# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                     Crim. No. 11-87 (MJD/JJK)

      Plaintiff,

v.

(1)  Julian Okeayainneh,
also known as Julius Inneh, also known
as Julian Nosa Inneh, also known as
J.J., also known as Julian Okeaya-
Inneh;
(7)  Adetokunbo Olubunmi Adejumo,
also known as Malik, also known as D,
also known as Tods, also known as
Tokunbo, also known as T;
(8)  Jude Obira Okafor;                       **REPORT AND**
(9)  Olugbenga Temidago Adeniran,             **RECOMMENDATION**
also known as Dennis Lok, also known
as Dayo Olugbega, also known as
Andre T. Andeiran, also known as
Andeniran T. Dayo, also known as
Oluwafemi Olarewaju Osibodu, also
known as Dayo, also known as Dre,
also known as Olugbenga Temidayo
Adeniran;
(10)  Jonathan Sie Earley,
also known as Joe Wilson, also known
as Joe Venni Wilson, Jr.;
(11)  Charles Tubman Dwamina; and
(12)  Sundayga Dexter Roberts;

      Defendants.

Ann M. Anaya, Esq., and John Docherty, Esq., Assistant United States
Attorneys, counsel for Plaintiff.

Jean M. Brandl, Esq., Cloutier & Brandl, P.A., counsel for Defendant
Okeayainneh.

1

Stephen R. O'Brien, Esq., Stephen R. O'Brien Law Office, counsel for Defendant Adejumo.

John S. Hughes, Esq., Law Office of John S. Hughes, counsel for Defendant Okafor.

Daniel Mohs, Esq., Law Office of Daniel Mohs, counsel for Defendant Adeniran.

Kevin W. DeVore, Esq., Larson King, LLP, counsel for Defendant Earley.

Wayne G. Nelson, Esq., Law Offices of Wayne G. Nelson, counsel for Defendant Dwamina.

Eric L. Newmark, Esq., Gaskins, Bennett, Birrell, Schupp, LLP, counsel for Defendant Roberts.

---

JEFFREY J. KEYES, United States Magistrate Judge

## INTRODUCTION

This matter has been referred to this Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636 and Dist. Minn. Loc. R. 72.1 on

the following pretrial motions:

Defendant (1) Julian Okeayainneh
- Motion for Dismissal Based on the Speedy Trial Act (Doc. No. 102), and
- Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 104).

Defendant (7) Adetokunbo Olubunmi Adejumo
- Motion to Suppress Evidence Obtained as a Result of Illegal Search or Seizure or Arrest (Doc. No. 332), and
- Motion to Suppress Statements, Admissions, and Answers (Doc. No. 333).

Defendant (8) Jude Obira Okafor
- Motion to Suppress Evidence Obtained as a Result of a Illegal Search or Seizure or Arrest (Doc. No. 180).

<u>Defendant (9) Olugbenga Temidago Adeniran</u>
-    Motion to Dismiss the Indictment (Doc. No. 214).

<u>Defendant (10) Jonathan Sie Earley</u>
-    Motion to Suppress Evidence Obtained as a Result of Search
     and Seizure (Doc. No. 116).

<u>Defendant (11) Charles Tubman Dwamina</u>
-    Motion for Suppression of All Evidence Obtained Pursuant to
     the Execution of a Search Warrant (Doc. No. 204).

<u>Defendant (12) Sundayga Dexter Roberts</u>
-    Motion to Suppress Evidence Obtained by Search and
     Seizure (Doc. No. 161).

A criminal-motions hearing was held before the undersigned on April 7, 2011, (and May 9, 2011, for Defendant Adejumo), at which several search warrants were received as exhibits. (*See* Doc. Nos. 266, 277, 354, 355.) In addition, a Statement of Rights and Acknowledgment and Waiver form and a Miranda Warning form were received as exhibits at the May 9, 2011 hearing. Following the April 7, 2011 hearing, the Court established a post-hearing briefing schedule so that the Defendants could present written argument regarding their suppression and dismissal motions.[1] Defendants Okeayainneh,[2] Adejumo, Okafor, and Adeniran filed post-hearing memoranda in support of their motions. Defendants Earley and Dwamina filed letters stating that they chose not to

---

[1]    Defendant Adejumo filed his brief in support of his motions prior to the May 9, 2011 hearing.

[2]    Defendant Okeayainneh's attorney filed the brief in support of Defendant's Motion for Dismissal Based on the Speedy Trial Act. Defendant Okeayainneh,
                              (Footnote Continued on Next Page)

3

submit any post-hearing brief in regard to their motions to suppress, and instead
submitted their motions on the moving papers already filed requesting a "four-
corners" review of the search warrants at issue.  Defendant Roberts did not file a
post-hearing brief.  For the reasons that follow, this Court recommends that all of
the motions be denied.

## BACKGROUND

The above-named Defendants have been charged with conspiring with
one another to commit bank fraud, among other related federal offenses,
including some of the Defendants who have been charged with mail fraud, wire
fraud, and aggravated identity theft.  (*See* Doc. No. 34.)  The Indictment explains
that:

> During a period from in or about 2006 to in or about March 2011, the
> [D]efendants, conspiring with and aiding and abetting one another,
> devised and participated in a scheme to defraud banks and bank
> customers using stolen identities, stolen and fraudulently created
> bank accounts, counterfeit checks, and fraudulently obtained credit
> card accounts.  In furtherance of this fraud, the [D]efendants
> recruited numerous individuals to conduct fraudulent transactions
> and utilized bank employees to fraudulently access victims' account
> information and engage in fraudulent financial transactions.

(*Id.* at ¶ 1.)  As part of the investigation of the offenses charged in the Indictment,
law-enforcement officials attempted to uncover evidence of the suspected
conspiracy through the execution of several search warrants in the Central
District of California, the District of Minnesota, and Ramsey and Hennepin

---

(Footnote Continued from Previous Page)
himself, filed a *pro se* brief in support of his Motion to Suppress Evidence.

Counties in the State of Minnesota.  The search warrants at issue in the pending

motions for suppression were admitted into evidence at the criminal-motions

hearings.

## DISCUSSION

### I.    Defendant Okeayainneh's Motions

#### A.    Motion for Dismissal Based on the Speedy Trial Act

The parties do not dispute the following facts.  California law enforcement

arrested Defendant Okeayainneh on December 17, 2010.  On December 20,

2010, a Complaint was filed in the United States District Court, District of

Minnesota, charging Defendant with conspiracy, bank fraud, and aggravated

identity theft in violation of various provisions of the United States Code.  (Doc.

No. 1.)  On December 20, 2010, an Application for a Writ of Habeas Corpus Ad

Prosequendum was issued by a United States Magistrate Judge in the District of

Minnesota.  (Doc. No. 2.)  On December 21, 2010, a judge in the U.S. District

Court, Central District of California held a detention and extradition hearing,

whereby Defendant was ordered to be detained, and a Warrant of Removal and

Commitment to Minnesota was signed.  On January 3, 2011, U.S. District Court,

District of Minnesota received Rule 5(c) documents from the Central District of

California as to Defendant Okeayainneh.  (Doc. No. 3.)  On January 12, 2011,

Defendant had his first appearance in federal district court in Minnesota.  (Doc.

No. 4.)  At the initial appearance, the Government moved for detention and the

Court granted temporary detention and set the Detention Hearing for January 18, 2011. (Doc. Nos. 4, 6.) On January 18, 2011, Defendant's attorney requested a continuance of the detention hearing/ preliminary hearing until February 22, 2011. (Doc. No. 10.) The Court granted this request. (*Id.*) On January 20, 2011, Defendant's attorney filed a motion to continue and exclude time from the Speedy Trial calculation. (Doc. No. 11.) A detention and preliminary hearing was held on February 22, 2011, and the Court ordered Defendant to be detained. (Doc. Nos. 15, 16.) The Indictment was then filed on March 8, 2011. (Doc. No. 34.)

Defendant Okeayainneh asserts that his first arrest was due to federal agency action. Therefore, he argues that his speedy trial rights under 18 U.S.C. § 3161(b) were violated because his time should have started running on December 17, 2010, rather than December 21, 2010, and the Indictment was not filed within thirty days of his arrest, even when taking into consideration the thirty-five days that were excluded when his attorney's motion for continuance was granted. The Government disagrees that the Speedy Trial Act computations should have started running on December 17, 2010, and argues there has been no Speedy Trial Act violation because of the exclusions provided for in the Act.

This Court concludes that there has been no violation of the Speedy Trial Act in Defendant Okeayainneh's case. The Speedy Trial Act states that "[a]ny information or indictment charging an individual with the commission of an

6

offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). However, the statute provides that certain time periods resulting from certain prescribed delays should be automatically excluded from the Speedy Trial Act calculations.

For example, § 3161(h)(1)(F) of the Act states that delay resulting from transportation of any defendant from another district shall be excluded in computing the time within which an indictment must be filed, "except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F). The Government asserts that the time from December 17, 2010, through January 12, 2011, should be excluded because of the transportation of Defendant from California. This Court agrees that time should be excluded based on the transportation of Defendant, but disagrees that the entire time between December 17, 2010, and January 12, 2011, should be excluded. The Government has presented nothing to rebut the presumption that excluding more than ten days during this time period is unreasonable. And the date of the order directing the transportation was signed on December 21, 2010, by the judge in California, not on December 17, 2010. Therefore, this Court concludes that the time between December 21, 2010 (the date the Warrant of Removal and

7

Commitment to Minnesota was signed), and December 31, 2010 is excluded from the Speedy Trial Act based on the transportation provision.

In addition, the Speedy Trial Act excludes any period of delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on or other prompt disposition of such motion." *Id.* § 3161(h)(1)(F). The Government's "motion for detention is a pretrial motion within the meaning of section 3161(h)(1)(F)." *United States v. Moses*, 15 F.3d 774, 777 (8th Cir. 1994). Here, the Government moved for detention on January 12, 2011, and the hearing and disposition of that motion concluded on February 22, 2011. Therefore, the time period between January 12, 2011, and February 22, 2011, is automatically excluded from the Speedy Trial Act calculations in this case.[3]

In sum, even assuming Defendant's Speedy Trial clock started running on December 17, 2011, excluding the above-referenced time periods, less than thirty days elapsed between Defendant's arrest and the Indictment.[4] Accordingly,

---

[3]    Defendant Okeayainneh contends that he never saw or received a copy of the Motion for Continuance filed by his attorney and that his attorney did not inform him that by waiving time he was excluding thirty-five days from the Government's required time in which to file the Indictment pursuant to 18 U.S.C. § 3161(b). Therefore, he asserts that Defendant's continuance motion was not a knowing and intelligent waiver. However, because this time period is automatically excluded from the Speedy Trial Act calculations, there was no need for Defendant's attorney to file a motion to exclude time, and therefore Defendant's arguments regarding whether there was a knowing and intelligent waiver with regard to that motion are irrelevant.

[4]    This Court's calculation is based on counting the following days for purposes of the Speedy Trial Act:  December 17–20, January 1–11,

(Footnote Continued on Next Page)

this Court recommends that Defendant's motion to dismiss be denied.

**B.    Motion to Suppress Evidence Obtained as a Result of Search and Seizure**

On December 17, 2010, U.S. Magistrate Judge David T. Bristow issued a warrant to search a storage unit at a specific address in Ontario, California.  (Hr'g Ex. 11.)  The search warrant was issued on the basis of probable cause contained in the application for search warrant and supporting affidavit of Special Agent Randall Flint, from the United States Secret Service, Minneapolis Field Office.  (*Id.*)  The search warrant identified the objects of the warrant as:

>    1.    All financial records that reflect the receipt or payment of money, income and expenses, including account payable records, account receivable records, documents from financial institutions or investment companies, and documents demonstrating a property interest in a business, real property, or personal property.

>    2.    All business and personal accounting records, including records of financial transactions, assets, liabilities, checkbook registers, financial account payable ledgers, account receivable ledgers and chart of accounts[.]

>    3.    Cell phones, notes, e-mails, correspondence, address and/or telephone books and papers reflecting names, addresses and/or telephone numbers of customers, vendors, subcontractors and other individuals or businesses.

>    5.[5]    Loan records, loan applications, W-2s, verification of employment forms and other related loan/mortgage records.

---

(Footnote Continued from Previous Page)
February 23–28, and March 1–7.  Therefore, the total amount of days expended before the filing of the Indictment was twenty-eight days.

5    There is no paragraph "4" in Attachment B.

6.    Other notes, documents and items evidencing the obtaining, secreting, transfer and/or concealment of money, income and assets; and the obtaining, secreting, transfer, concealment, and/or expenditure of money.

7.    Photos, papers or documents containing identity information or bank customer information and counterfeit IDs'.

8.    Suspected counterfeit checks, check stock, laminate, equipment and material to manufacture counterfeit IDs and counterfeit checks.

9.    Any documents tending to show the identities of associates or co-conspirators, or tending to identify the location of criminally derived property.

10.    U.S. Currency.

11.    Any evidence listed above that may be stored in an electronic and/or magnetic form, on cassettes, data diskettes, back-up tapes, hard drives, CD-ROM's, and/or Bernoilli drives. Computer storage media, including central processing unit, laptop computers, monitor, keyboard, printer, modem, software, manuals, passwords, and other documents needed to retrieve information from the electronic and/or magnetic environment[.]

The terms "property" and ["]evidence" include all the foregoing items in whatever form and by whatever means that they may have been created or stored, including any electrical, electronic, or magnetic form as well as any equipment used to access the information (such as floppy diskettes, hard drives, ZIP disks, CD-ROMs, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, e-mail servers or systems, personal digital assistants such as Palm Pilot computers, as well as printouts or readouts from any magnetic storage device and associated monitors) keyboards, and other peripherals; any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic or audio form (such as microfilm, microfiche, prints, slides, negatives, videotapes, photocopies, audio cassettes and digital formats).

12.     Any and all other documents, records, items or other materials
        evidencing violations of Title 18, U.S.C. . . . sections 371, 473,
        1028, 1028A, 1341, 1343, 1344, 1956, 1957 and 2113(b); and
        Title 31 U.S.C., section 5324[.]

(Hr'g Ex. 11.)  The search of the storage unit was conducted on December 17,

2010.  (*Id.*)  During the course of the search, various computers, checks, notes

with account numbers, safes, social-security-number cards, other identification

cards, credit and debit cards, credit reports, photographs, receipts, floppy disks,

phones, a plastic card printer and other electronic equipment, among other

related things were seized.  (*Id.*)

Defendant Okeayainneh moves to suppress any physical evidence

obtained as a result of the search and seizure on the grounds that the search

warrant issued was issued without a sufficient showing of probable cause.  At the

hearing, Defendant's counsel requested that the Court conduct a "four-corners"

review of the search warrant at issue (Hr'g Ex. 11), but identified no particular

deficiency of the supporting affidavits in establishing the probable cause required

to issue the warrant.  The Court requested post-hearing briefing from the parties.

Neither Defendant's attorney nor the Government submitted post-hearing briefs.

Defendant himself, however, submitted a *pro se* brief in support of his motion

(Doc. No. 340).  In his *pro se* brief, Defendant raises two arguments: (1) there

was no valid signature on the search warrant; and (2) Attachment B fails to meet

the particularity requirement.

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois* v. *Gates*, 462 U.S. 213, 236 (1983)). When determining whether probable cause exists, a court does not independently evaluate each piece of information, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002). The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004). "In determining whether probable cause exists, [the courts] recognize that the police possess specialized law enforcement experience and thus may draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous." *United States v. Mendoza,* 421 F.3d 663, 667 (8th Cir. 2005). Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting

*Gates*, 462 U.S. at 238–39).    Because reasonable minds may differ on whether

a particular search-warrant affidavit establishes probable cause, the issuing

court's determination is accorded great deference.    *United States v. Wajda*, 810

F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914

(1984)).

      This Court concludes that the search warrant for a certain storage unit was

based on probable cause, as set forth in the warrant application and the

underlying ten-page affidavit, which describes various incidents linking Defendant

Okeayainneh with fraudulent activity and linking Defendant Okeayainneh to the

storage unit identified in the search warrant. In addition, the warrant properly and

sufficiently identified the location of the search and the items to be seized.

      To satisfy the particularity requirement of the Fourth Amendment, "the

warrant must be sufficiently definite to enable the searching officers to identify

the property authorized to be seized."    *United State v. Summage*, 481 F.3d 1075,

1079 (8th Cir. 2007) (citing *United States v. Horn*, 187 F.3d 781, 788 (8th

Cir.1999)).    The particularity requirement is a standard of "practical accuracy

rather than a hypertechnical one."    *Id.* (citing *United States v. Peters*, 92 F.3d

768, 769–70 (8th Cir.1996)).    Nevertheless, a warrant that fails to meet the

particularity requirement is invalid.    *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

      Defendant Okeayainneh contends that Attachment B to the search

warrant, which lists the items to be seized, fails to meet the particularity

requirement.  This Court disagrees.  While a search warrant must state with

sufficient particularity the items to be seized, the requisite degree of specificity

depends on the circumstances and the types of property to be seized.  *Horn*, 187

F.3d at 788.  If the individual goods to be seized cannot be more precisely

identified at the time that the warrant is issued, naming only a generic class of

items may meet the particularity requirement.  *United States v. Johnson*, 541

F.2d 1311, 1314 (8th Cir. 1976).  For instance, in a scheme to defraud, a search

warrant is deemed sufficiently particular in describing the items to be seized "'if it

is as specific as the circumstances and nature of activity under investigation

permit.'"  *Id.* (quoting *United States v. Kail*, 804 F.2d 441, 445 (8th Cir. 1986)).

And the Eighth Circuit has upheld warrants authorizing the seizure of "certain

books and records . . . relating to the extortionate credit transaction business."

*United States v. Dennis*, 625 F.2d 782, 792 (8th Cir. 1980).

    Defendant Okeayainneh argues that Attachment B covers almost anything

that could be found in most households in the United States.  Although that may

be true, the argument is without merit because it fails to focus on what the

warrant authorizes.  The officers were limited in their search by the fact that the

objects seized had to be identifiably related to the listed violations.  The officers

executing the search warrant could not predict the form in which relevant data

would appear.  Therefore, the warrant sought a variety of evidence directly

related to the identity-theft and bank-fraud investigation.  Although true that the

category "any and all other documents, records items, items or other materials evidencing violations of Title 18, U.S.C. . . . sections 371, 473, 1028, 1028A, 1341, 1343, 1344, 1956, 1957 and 2113(b); and Title 31 U.S.C., section 5324" is broad in nature, this Court believes that the statement is sufficiently related to identity theft and bank fraud to satisfy the particularity requirement of the Fourth Amendment and to allow the officers to recognize and seize the materials described.

Defendant Okeayainneh also states in his brief that the "Trial Court should note that Search Warrant has no valid Judge's signature."  (Doc. No. 340 at 1.) He, however, made no further argument regarding this point.  The Fourth Amendment prohibits unreasonable searches and seizures and requires that warrants be issued "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV.  Thus, to be valid, a search warrant must bear the signature of a judge authorizing the search.  *See United States v. Bach*, 301 F.3d 1063, 1067 (8th Cir. 2002). The lack of a signature on the warrant actually served, however, is at most a technical error and does not render the search unconstitutional. *See United States v. Lipford*, 203 F.3d 259, 270 (4th Cir. 2000); *United States v. Kelley*, 140 F.3d 596, 602 n.6 (5th Cir. 1998).

It is unclear whether Defendant received a signed or unsigned copy of the search warrant at the time of the search.  However, even if the officers failed to present a signed copy to Defendant, it did not render the warrant constitutionally

15

invalid.  Here, the search warrant contains only the stamped signature of the
magistrate judge, "David T. Bristow."  (Hr'g Ex. 11.)  Defendant, however, has
presented no evidence that Judge Bristow did not sign stamp the search warrant
before the officers executed the search, and he has not alleged that the
magistrate judge did not in fact approve the search warrant.  A magistrate's
signature stamp on a search warrant does not necessarily render the search
warrant invalid.  See United States v. Juarez, 549 F. 2d 1113, 1114–15 (7th Cir.
1977) (stating that the court "do[es] not approve the use of a signature stamp by
a magistrate [because] [i]ts use creates the appearance that the user lacks the
sensitivity a federal judicial officer should have to the important values which the
warrant is designed to protect[,]" yet finding no error to refuse to declare the
warrant invalid when the magistrate testified that he remembered signing the
warrant); see also United States v. Daccarett, 6 F.3d 37, 52–53 (2d Cir. 1993)
(finding no error in concluding that a "rubber-stamped signature" did not render a
DEA subpoena invalid).  Because there is no evidence or even allegation that the
magistrate did not approve the search warrant, any argument that the search
warrant was deficient on this ground fails.  See Ross v. St. Eve, No. 05 C 2797,
2009 WL 2382529, *5 (N.D. Ill. July 31, 2009).  Therefore, the search warrant is
valid, supported by probable cause, and lawfully issued, and there is no
requirement for suppression of evidence seized pursuant to the warrant.[6]

---

[6]        Even if probable cause did not exist or if the specificity requirement was
(Footnote Continued on Next Page)

Therefore, this Court recommends that Defendant's motion to suppress evidence

be denied.

### C.    Pro Se Motion for Dismissal Based on Double Jeopardy Pursuant to F.R.C.P. 12(b)(3)(B)

At the April 7, 2011 hearing, one of the motions presented by Defendant

Okeayainneh was his Motion to File Supplemental Pro Se Pretrial Motions.  The

Court granted in part and denied in part Defendant's motion, stating the following:

"Defendant may submit a letter to the Court, after consulting with this attorney,

explaining what additional motions he would like to file.  Upon receipt of such

---

(Footnote Continued from Previous Page)
not met, there was a facially valid warrant, and therefore the good-faith exception
to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897
(1984), would have to be considered.  "Under the good-faith exception, evidence
seized pursuant to a search warrant that lacked probable cause is admissible if
the executing officer's good-faith reliance on the warrant is objectively
reasonable."  *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008).  "The
good-faith inquiry is confined to the objectively ascertainable question whether a
reasonably well trained officer would have known that the search was illegal
despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427,
430 (8th Cir. 2007) (alteration in original) (quotations omitted).  "When assessing
the objective [reasonableness] of police officers executing a warrant, [the Court]
must look to the totality of the circumstances, including any information known to
the officers but not presented to the issuing judge."  *Id.* at 431 (alteration in
original) (quotations omitted).

Here, this Court concludes that even if probable cause did not exist, or if
the specificity requirement was not met, the good-faith exception would apply.
There is no evidence to suggest that the officers' reliance on the warrant was not
in good faith, nor is there evidence that the officer's reliance was not reasonable.
Thus, the *Leon* good-faith exception provides an alternative basis for the
conclusion that the evidence seized as a result of the execution of the search
warrant need not be suppressed.

letter, the Court will then determine whether to allow Defendant to file the additional motions." (Doc. No. 271.) Rather than following the Court's instructions, Defendant Okeayainneh filed a Pro Se Motion for Dismissal Based on Double Jeopardy Pursuant to F.R.C.P. 12(b)(3)(B) (Doc. No. 314).[7]

On May 4, 2011, this Court issued an Order stating that it would consider Defendant's *pro se* motions out of consideration for due process, and provided a briefing schedule for the Government to respond. (Doc. No. 353.) In response, the Government has moved for this Court to reconsider its May 4, 2011 Order, and to strike Defendant's *pro se* motions for failure to comply with the Court's Order and because certain judges in this district do not permit represented criminal defendants to file *pro se* motions. The Government alternatively argues that Defendant's motions should be denied.

Although allowing represented criminal defendants to file *pro se* motions in this district is disfavored, the circumstances should be reviewed on a case-by-case basis. Here, because of the nature and complexity of the action, the fact that Defendant Okeayainneh's *pro se* motions are not duplicative of those filed by his attorney, because it is unclear whether the issues raised in the *pro se* briefing were brought to Defendant Okeayainneh's counsel, and because the *pro se* motions presented what this Court construes as non-frivolous concerns, this

---

[7]    Defendant Okeayainneh also filed a Pro se Motion to Unseal the Grand Jury Indictment in this Case and Provide a Copy of the Grand Jury Transcript to Defendant (Doc. No. 308), which will be ruled on by this Court in a separate

(Footnote Continued on Next Page)

18

Court will consider them. Therefore, the Government's motions for reconsideration and to strike are denied. Defendant Okeayainneh, however, is hereby warned that any future motions (i.e., motions *in limine*) should be presented through his attorney.

In his motion, Defendant Okeayainneh asserts that his double-jeopardy rights pursuant to the Fifth Amendment of the United States Constitution have been violated because the Government has charged him with bank-fraud conspiracy (count 1) and money-laundering conspiracy (count 56). Defendant Okeayainneh asserts that the Government has charged him with two counts of the same offense. This Court concludes that Defendant Okeayainneh's Fifth Amendment rights have not been violated.

The Double Jeopardy Clause is not violated when an indictment charges more than one offense, so long as the two offenses at issue each require proof of an element that the other does not. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). To be convicted of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344, the Government must prove there was an agreement to (1) execute or attempt to execute a scheme or artifice, (2) to defraud a financial institution or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises. *See*

_____

(Footnote Continued from Previous Page)
order.

19

*United States v. Pizano*, 421 F.3d 707, 721 (8th Cir. 2005) (listing elements of bank fraud). To be convicted of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) or (ii), the Government must prove: (1) there was an agreement to conduct, or attempt to conduct, a financial transaction which in any way or degree affected interstate commerce or foreign commerce; (2) the financial transaction involved the proceeds of illegal activity; (3) the conspirators knew the property represented the proceeds of some form of unlawful activity; and (4) the conspirators agreed to conduct or to attempt to conduct the financial transaction knowing the transaction was "designed in whole or in part [] to conceal or disguise the nature, the location, the source, the ownership or the control of the proceeds of specified unlawful activity." *United States v. Dvorak*, 617 F.3d 1017, 1021–22 (8th Cir. 2010) (quoting 18 U.S.C. § 1956(a)(1)(B)(i)). Because conspiracy to commit money laundering requires proof of elements that conspiracy to commit bank fraud does not, the Double Jeopardy Clause is not violated, and this Court recommends that Defendant Okeayainneh's pro se motion be denied.

## II.   Defendant Adejumo's Motions

### A.   Motion to Suppress Evidence Obtained as a Result of Illegal Search or Seizure or Arrest

Defendant Adejumo filed a motion seeking "to suppress any physical evidence obtained because of a search or seizure." (Doc. No. 332.) He filed a memorandum in support of his motion prior to his May 9, 2011 criminal-motions

20

hearing.  In that memorandum, Defendant asserts that there was an insufficient basis of knowledge to justify the issuance of the warrants to search and seize the following items: (1) a HP laptop; (2) a blue T-Mobile cell phone; (3) a Grey Nokia cell phone; (4) a T-Mobile cell phone; (5) a Blackberry Curve cell phone; and (6) a black 30 GB Ipod.  Specifically, Defendant asserts that Special Agent Jim Shoup's affidavit in support of the warrants to search the above-listed electronics does not state whether these electronics were used in the commission of the criminal acts alleged in this case.  Instead, because Agent Shoup states that these electronics are the sort commonly used to commit the type of criminal acts alleged, Defendant asserts that his statement lacks "corroboration" and is "not based on observed facts or reliable information."  (Doc. No. 335, Def.'s Memo. in Supp. of Pre-trial Motions 2.)  Defendant's memorandum does not reference the April 30, 2010 search warrant for T-Mobile numbers 612-636-3390 and 612-242-8943; nor does it reference the March 2, 2010 search warrant for XXX XXnd Ave. North, Minneapolis MN and a 1998 Landrover bearing MN License Plate 4AE419 – VIN XXXXXXXXXXXXX3939.

At the May 9, 2010 criminal-motions hearing, two Hennepin County search warrants dated March 2 and April 30, 2010, and six federal search warrants dated March 10, 2011, were admitted into evidence.  (5/9/11 Hr'g Exs. 3, 4, 5.) At that time, Defendant's counsel confirmed that Defendant wanted the Court to conduct a "four-corners" review of all of those warrants, but presented no further

argument regarding any alleged violation of his right to be free from

unreasonable searches and seizures.

Ordinarily, searches pursuant to a warrant are reviewed to determine if

there was probable cause for the search in the search warrant application and

affidavit.  *Gates*, 462 U.S. at 236.  "Probable cause exists when, given the totality

of the circumstances, a reasonable person could believe there is a fair probability

that contraband or evidence of a crime would be found in a particular place."

*Fladten*, 230 F.3d at 1085.  There is no requirement that there be an affirmation

that the items sought to be searched had actually been used in the commission

of the criminal acts alleged in the case.  *See United States v. Whitner*, 219 F.3d

289, 297 (3d Cir. 2000) ("[D]irect evidence linking the crime to the location to be

searched is not required to support a search warrant.").  "[P]robable cause can

be, and often is, inferred by 'considering the type of crime, the nature of the items

sought, the suspect's opportunity for concealment and normal inferences about

where a criminal might hide stolen property.'"  *United States v. Jones*, 944 F.2d

1051, 1056 (3d Cir. 1993) (quoting *United States v. Jackson*, 756 F.2d 703, 705

(9th Cir. 1985)).  The task of a court issuing a search warrant is "simply to make

a practical, common sense decision whether, given all the circumstances set

forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of

persons supplying hearsay information, there is a fair probability that contraband

or evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at

238.

This Court has reviewed the search warrants at issue (5/9/11 Hr'g Exs. 3, 4, 5), and concludes that the warrants were based on sufficient probable cause. With respect to the federal search warrants, in addition to describing several incidents linking Defendant Adejumo to various bank-fraud schemes, Special Agent Shoup reports that the CRI and cooperating defendants in the case had told him "that participants in this network utilize cell phones, computers and electronic storage devices to transmit, store and transport stolen bank account information, stolen identities and other information to facilitate fraud." (Hr'g Ex. 5 at 8.) The computer, Ipod, and cell phones that are the subject of the federal search warrants at issue were seized incident to Defendant Adejumo's arrest at the Minneapolis/St. Paul International Airport just prior to him boarding a flight to Atlanta, which was ultimately destined for Nigeria.

After reviewing the search warrants and supporting affidavits in a practical, common-sense manner, and considering the circumstances of the investigation of the network as a whole, this Court concludes that there was a fair probability that evidence of bank-fraud schemes and other related crimes would be found in the items requested to be searched. *See Gates*, 462 U.S. at 238. Further, this Court is satisfied that the warrants here meet the requirements under the Fourth Amendment and the good faith exception enunciated in *United States v. Leon*, 468 U.S. 897 (1984). Therefore, this Court recommends that Defendant

23

Adejumo's motion to suppress evidence be denied.

### B.    Motion to Suppress Statements, Admissions, and Answers

Defendant Adejumo's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 333), presented only boilerplate, conclusory statements and no argument regarding any alleged violation of his constitutional rights.  He filed a memorandum in support of various motions prior to his May 9, 2011 criminal-motions hearing, but this memorandum did not address this motion to suppress statements.  At the May 9, 2010 criminal-motions hearing, a Statement of Rights and Acknowledgment and Waiver form dated January 2, 2008, and a Miranda Warning form dated February 27, 2011, purportedly both relating to Defendant Adejumo, were admitted into evidence.  (5/9/11 Hr'g Exs. 1, 2.)  At that time, Defendant's counsel stipulated that no testimony was required and requested that the Court review the two forms to determine whether there was a knowing and intelligent waiver as to the forms used.  Defendant's counsel presented no further argument regarding any alleged violation of Defendant Adejumo's constitutional rights.

"It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing."  *United States v. Starks*, 193 F.R.D. 624, 629 (D. Minn. 2000) (quoting *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977), *cert. denied* 431 U.S. 932, 97 (1977)); *see also United States v. Phillips*, 540 F.2d 319, 325 (8th Cir. 1976) (stating that

24

the ultimate burden of proof is on the defendant who seeks to suppress

evidence).   "At a minimum, it is defendant's burden to come forth with some

evidence and argument to support his position that evidence . . . should be

suppressed." *United States v. Rosetter*, Crim. No. 10-83 (JNE/JSM), 2010 WL

5184991, at *23 (D. Minn. Oct. 1, 2010) (citing *Starks*, 193 F.R.D. at 629)

("[E]ven in those circumstances where the Government has the ultimate burden

of persuasion, Defendant has the initial burden of making a prima facie showing

of illegality.").   And "[f]ailure to provide the Court with any support for the motion

is a sufficient basis for denial of the motion." *Rosetter*, 2010 WL 5184991, at *23.

Here, there is no evidence regarding the circumstances of any statements

Defendant Adejumo made to law-enforcement officials other than the forms

signed by Defendant making the appropriate waivers; the forms clearly set forth

the waiver and Defendant Adejumo has made no argument to the contrary.

Therefore, Defendant Adejumo has not met his burden and there is no record on

which this Court can determine that Defendant Adejumo's rights were violated.

Therefore, this Court recommends that Defendant Adejumo's motion to suppress

statements be denied.

III.    **Defendant Okafor's Motion**

   A.    **Motion to Suppress Evidence Obtained as a Result of a Illegal
          Search or Seizure or Arrest**

Defendant Okafor challenges the January 28, 2011 search warrant (Hr'g

Ex. 10), signed by United States Magistrate Judge Jeanne J. Graham and issued

to search the building, out buildings, out lots, containers and vehicles located at a certain specified address in Blaine, Minnesota. This location was used for the business commonly known as AJ Auto. Based on this challenge, Defendant moves to suppress the physical evidence seized from the specifically described location in Blaine.

Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search. *Gates*, 462 U.S. at 236. "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *Fladten*, 230 F.3d at 1085 (citing *Gates*, 462 U.S. at 236). When determining whether probable cause exists, a court does not evaluate each piece of information independently, but, rather, considers all of the facts for their cumulative meaning. *Allen*, 297 F.3d at 794. The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also Salter*, 358 F.3d at 1084. When information in the application for the search warrant is provided by a confidential informant, the totality of the circumstances must show that the

information is sufficiently reliable. *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004) (citing *Gates*, 462 U.S. at 233). Sufficient reliability may be shown through "corroboration by other evidence, or if the informant has a history of providing reliable information." *Id.* (citing *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *Oropesa*, 316 F.3d at 766 (quoting *Gates*, 462 U.S. at 238–39). Since reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *Wajda*, 810 F.2d at 760 (citing *Leon*, 468 U.S. at 914).

Defendant Okafor contends that Special Agent Curtis G. Chapa's affidavit supporting the search warrant application lacks a sufficient basis of knowledge to justify the issuance of the warrant. He asserts that "the veracity and reliability of the 'confidential reliable informant' (CRI) went undocumented and the warrant lacked corroboration of the information obtained." (Doc. No. 293, Defendant[']s Memorandum in Support of Pre-Trial Motions 2.) Specifically, Defendant argues that: (1) the affidavit fails to state what independent corroboration was obtained corroborating the information provided by the CRI; (2) the statement that the "CRI conspired with others in the network to commit various frauds prior to becoming a

CRI" lacks particularity or explanation; (3) the CRI is a person of questionable veracity and reliability because of the CRI's prior involvement in various frauds and because there is no indication that the CRI had ever provided reliable information in the past; and (4) the affidavit does not mention that the majority of conversations between the CRI and Defendant Okafor were conducted in the Nigerian language of Igbo, and law enforcement did not have an interpreter to confirm that the CRI's translations were accurate.

Upon reviewing Agent Chapa's Application and Affidavit for the search warrant in its entirety, this Court finds that it established probable cause for the search warrant. As set forth above, this Court's role is simply to "make a practical, common-sense decision" about whether there is a "fair probability" that officers will discover contraband. *See Gates*, 462 U.S. at 238. In addition to the recorded conversation with the CRI, the thirty-seven-page detailed search warrant application stated, among other things, the following:

- the CRI had previously conspired with others in the network to commit various frauds prior to becoming a CRI;

- the CRI provided more specific information about this network by explaining that a group of individuals reside and operate in Minnesota and California who buy and sell stolen identity information and customer bank-account information, obtain counterfeit IDs in the name of the stolen identities and the stolen bank-account information, recruit others in the network to assist in opening fraudulent bank accounts, credit cards and loans in the name of the stolen identity, and withdraw money from the customer's bank account(s), credit card(s), purchase real estate and pass counterfeit checks;

- the CRI had stated that the individuals associated with the criminal organization would conceal their stolen identity information, fraudulent

28

bank-account information, counterfeit checks, fictitious documents, and stolen credit cards inside the vehicles located at the address listed to be searched, and that items purchased with fraud proceeds were being shipped out of the country;

- Cooperating Defendant #2 said that the identity documents of J.B. and the currency withdrawn from the bank account used on a certain day to commit bank fraud had been retained and last observed in Defendant Coker's possession while inside AJ Auto;

- law enforcement observed approximately twelve vehicles parked in a grass lot at the address listed to be searched with footprints leading up to them in the snow;

- law enforcement observed an international shipping container located in a grass lot at the address listed to be searched;

- Co-Defendants were arrested and observed committing fraudulent acts consistent with the network activity provided by the CRI;

- investigations of Co-Defendants linked certain Co-Defendants to a group operating in Minnesota and other States consistent with the network activity provided by the CRI;

- Cooperating Defendant #3 told law enforcement that he was recruited out of Atlanta to fly to Minnesota to work with a group of people to commit fraud by making purchases or cash withdrawals using credit cards obtained in the names of others and counterfeit IDs in the name of the credit-card holder;

- Cooperating Defendant #3 identified Co-Defendant Coker as one of the people he conspired with to commit fraud when he came to Minnesota;

- Cooperating Defendant #1 provided certain corroborated information regarding fraudulent incidents consistent with the network activity provided by the CRI;

- Cooperating Defendant #2 had been at ALJ Auto with Defendant Coker while committing fraud;

- Cooperating Defendant #2 described an incident where Cooperating Defendant #2 rode with Defendant Coker to an Auto Shop location in

Blaine, Minnesota, which was a "Cover Up" business where groups of Nigerians gather to openly discuss fraud;

- both Cooperating Defendant #2 and the CRI stated that groups of Nigerians buy vehicles and ship them to Africa;

- both the Cooperating Defendant #2 and the CRI stated that the auto shop is not a legitimate auto business;

- law enforcement has corroborated that the auto shop referenced by Cooperating Defendant #2 is the same auto shop identified by the CRI, which was the subject property to be searched in the search-warrant application;

- Cooperating Defendant #2 reported that Defendant Coker has told Cooperating Defendant #2 that he likes to keep ID's in compartments of vehicle doors and under floor mats;

- evidence seized from a storage locker in California was consistent with the network activity described by the CRI, some of which related to the reported fraud that had been committed in Minnesota;

- Defendant Okeayainneh's Wells Fargo Bank account in California reflected deposits of currency at various Wells Fargo Bank branches in Minnesota; and

- Defendant Coker was positively identified in surveillance photos related to six separate deposits reflected on Defendant Okeayainneh's account.

The Court concludes that the totality of the circumstances here shows that the information received from the CRI is sufficiently reliable. The affidavit includes reference to corroboration through surveillance, seizures of evidence, and through the reports from three cooperating defendants. All of the above referenced information established a fair probability that evidence of identity theft, bank fraud, and the network activity described by the CRI would be found at the

30

location in Blaine commonly known as AJ Auto.

Therefore, the evidence seized pursuant to the search warrant for the building, out buildings, out lots, containers and vehicles located at the certain specified address in Blaine, Minnesota (Hr'g Ex. 10), was not unlawfully obtained in violation of the constitutional rights of Defendant Okafor. The search warrant was based on sufficient probable cause as stated in the Affidavit of Curtis G. Chapa and as determined by United States Magistrate Judge Jeanne Graham.[8] The warrant properly and sufficiently identified the location of the search and the items to be seized. The search warrant here was lawfully issued, and there is no requirement for suppression of evidence seized pursuant to the warrant. Therefore, this Court recommends that Defendant Okafor's motion to suppress be denied.

---

[8]     Even if probable cause did not exist, there was a facially valid warrant and the good faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), would have to be considered. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *Perry*, 531 F.3d at 665. "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Proell*, 485 F.3d at 430 (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted). Here, this Court concludes that the good-faith exception would apply. There is no evidence to suggest that the officers' reliance on the warrant was not in good faith, nor is there evidence that the officers' reliance was not reasonable.

### III.    Defendant Adeniran's Motion

#### A.    Motion to Dismiss the Indictment

The parties do not dispute the following facts.  On July 12, 2010, a Complaint was filed in the U.S. District Court, District of Minnesota, charging Defendant Adeniran with using a means of identification of another person during and in relation of an access device fraud in violation of certain provision of the United States Code, and a United States Magistrate Judge Janie S. Mayeron issued a warrant for Defendant Adeniran's arrest.  (Crim. No. 10-267(JNE/JJG), Doc. Nos. 1, 3.)  On August 23, 2010, Defendant Adeniran was arrested in New York.  On this same date, Defendant appeared before a magistrate judge in the Southern District of New York.  At this hearing, the judge ordered Defendant Adeniran to be detained and removed to the District of Minnesota.  (Crim. No. 10-267(JNE/JJG), Doc. No. 3.)  On August 25, 2010, an Application for a Writ of Habeas Corpus Ad Prosequendum was issued by a United States Magistrate Judge in the District of Minnesota.  (Doc. No. 2.)  On August 30, 2010, U.S. District Court, District of Minnesota received Rule 5(c) documents from the Southern District of New York as to Defendant.  (Crim. No. 10-267(JNE/JJG), Doc. No. 3.)  On September 2, 2010, Defendant Adeniran had his initial appearance in the U.S. District Court, District of Minnesota.  (Crim. No. 10-267(JNE/JJG), Doc. No. 4.)  At the initial appearance, the Government moved for detention and the Court granted temporary detention and set the Detention/

32

Preliminary Hearing for September 7, 2011.  (Crim. No. 10-267(JNE/JJG), Doc.

Nos. 4, 8.)  A detention and preliminary hearing was held on September 7, 2011,

and the Court ordered Defendant to be detained.  (Crim. No. 10-267(JNE/JJG),

Doc. Nos. 7, 9.)  The Indictment was then filed on October 5, 2011.  (Crim.

No. 10-267(JNE/JJG), Doc. No. 10.)

On November 10, 2011, Defendant Adeniran filed a Motion to Dismiss

Indictment for Violation of Speedy Trial Act (Crim. No. 10-267(JNE/JJG), Doc.

No. 24), among other pre-trial motions.  At the criminal-motions hearing on

November 19, 2010, Defendant withdrew the motion to dismiss (Crim. No. 10-

267(JNE/JJG), Doc. No. 36.)  At a status conference held before U.S. District

Court Judge Joan N. Ericksen on February 15, 2011, Defendant orally made a

motion to have new counsel appointed, which was granted.  (Crim. No. 10-

267(JNE/JJG), Doc. No. 43.)  On February 28, 2011, Attorney Daniel Mohs was

appointed to represent Defendant Adeniran.  (Crim. No. 10-267(JNE/JJG), Doc.

No. 45.)[9]

On March 8, 2011, Defendant Adeniran was re-indicted in the present

---

[9]     Defendant asserts that according to his recollection, Judge Ericksen stated
at the February 15, 2011 status conference that Defendant could not be re-
indicted for the same offense conduct until new counsel had been appointed.
Defendant's recollection is misplaced.  The transcript indicates only that Judge
Ericksen inquired as to whether Defendant Adeniran's previous attorney would
represent him until there was new counsel of record, and Defendant's previous
counsel agreed.  Moreover, the record reflects that new counsel *was* appointed
on February 29, 2011, in Judge Ericksen's case, which was eight days before
Defendant Adeniran was re-indicted in the present case.

case.  (Doc. No. 34.)  The Government then filed a motion to dismiss the

Complaint and Indictment in the case pending before Judge Ericksen (Crim.

No. 10-267(JNE/JJG), Doc. No. 46), which was granted on March 14, 2011.

(Crim. No. 10-267(JNE/JJG), Doc. No. 47.)

Defendant Adeniran has now moved again for dismissal of the Indictment.

Defendant argues that his speedy trial rights under 18 U.S.C. § 3161(b) were

violated because the Indictment in the earlier action was not filed within thirty

days of his arrest, even when excluding the delay resulting from his removal from

New York to Minnesota.  The Government argues there has been no Speedy

Trial Act violation because of the exclusions provided for in the Act.  This Court

agrees with the Government.

The Speedy Trial Act states that "[a]ny information or indictment charging

an individual with the commission of an offense shall be filed within thirty days

from the date on which such individual was arrested or served with a summons in

connection with such charges."  18 U.S.C. § 3161(b).  However, the statute

provides that certain time periods resulting from certain prescribed delays should

be automatically excluded from the Speedy Trial Act calculations.

Both parties agree that the period of time for the delay in transporting

Defendant Adeniran from New York to Minnesota should be excluded from the

Speedy Trial Act calculation.  Section 3161(h)(1)(F) of the Act states that delay

resulting from transportation of any defendant from another district shall be

excluded in computing the time within which an indictment must be filed, "except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable." 18 U.S.C. § 3161(h)(1)(F). Therefore, the parties are correct that the time from August 23, 2010, through September 2, 2010, is excluded from the Speedy Trial Act based on the transportation provision.

Defendant Adeniran argues that because the time period from September 2, 2010, and October 5, 2010, is more than thirty days, the Government has violated the Speedy Trial Act. Defendant, however, fails to take into account that the Speedy Trial Act excludes any period of delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on or other prompt disposition of such motion." *Id.* § 3161(h)(1)(F). The Government's "motion for detention is a pretrial motion within the meaning of section 3161(h)(1)(F)." *United States v. Moses*, 15 F.3d 774, 777 (8th Cir. 1994). Here, the Government moved for detention on September 2, 2010, at the initial appearance, and the hearing and disposition of that motion concluded on September 7, 2010. Therefore, the time period between September 2, 2010, and September 7, 2010, is automatically excluded from the Speedy Trial Act calculations in this case.[10]

---

[10]    Defendant Okeayainneh contends that he never saw or received a copy of
(Footnote Continued on Next Page)

In sum, excluding the above-referenced time periods, less than thirty days elapsed between Defendant Adeniran's arrest and the Indictment.[11]  Accordingly, this Court recommends that Defendant's motion to dismiss be denied.

## IV.    Defendant Earley's Motion

As noted above, Defendant Earley did not submit a post-hearing memorandum in support of his motion to suppress, but instead his counsel filed a letter requesting the Court review "the issue of probable cause to execute the search warrant on the 'four corners' of the search warrant and its application." (Doc. No. 289.)  At the criminal motions hearing, five search warrants were admitted into evidence regarding Defendant Earley.  (Hr'g Exs. 4, 6, 7, 8, 9.) Although Defendant Earley's counsel's letter does not indicate which warrant and application he wanted the Court to review, based on the discussion at the criminal-motions hearing, this Court assumes he wishes to have the March 2011 warrant reviewed (which relates to Defendant Earley's business), and not the

_____

(Footnote Continued from Previous Page)

the Motion for Continuance filed by his attorney and that his attorney did not inform him that by waiving time he was excluding thirty-five days from the Government's required time in which to file the Indictment pursuant to 18 U.S.C. § 3161(b).  Therefore, he asserts that Defendant's continuance motion was not a knowing and intelligent waiver.  However, because this time period is automatically excluded from the Speedy Trial Act calculations, Defendant's arguments regarding whether there was a knowing and intelligent waiver with regard to that continuance are irrelevant.

[11]     This Court's calculation is based on counting the following days for purposes of the Speedy Trial Act:  September 8–30, and October 1–5. Therefore, the total amount of days expended before the filing of the Indictment

(Footnote Continued on Next Page)

warrants from 2006.  Defendant Earley has presented no argument regarding any alleged violation of his right to be free from unreasonable searches and seizures, and this Court's review of the March 2011 search warrant reveals nothing that warrants suppression.  Therefore, this Court recommends that Defendant Earley's motion to suppress be denied.

## V.    Defendant Dwamina's Motion

In his motion, Defendant Dwamina moved to suppress all evidence obtained pursuant to the search warrants executed on his Blackberry phone and the thumb drive he possessed at the time of his arrest, on the grounds that the warrant was not supported by sufficient probable cause.  (Doc. No. 204.) Defendant Dwamina did not submit a post-hearing memorandum in support of his motion to suppress, but instead his counsel submitted a letter stating that he was "relying on the motion and understand[s] the court will review the four corners of the affidavit."  The two search warrants at issue were admitted into evidence at the April 7, 2011 hearing.  (Hr'g Exs. 2, 3.)  In Defendant's motion, he asserts that the affidavit did not provide probable cause because (1) the application was based primarily on allegations directed at the Co-Defendants; and (2) the allegations in the affidavit supporting the search warrant application regarding Defendant's involvement are susceptible to being interpreted as involving non-criminal activity.

---

(Footnote Continued from Previous Page)
was twenty-eight days.

This Court has reviewed the two search warrants at issue (Hr'g Exs. 2, 3), and concludes that the warrants were based on sufficient probable cause. When reviewing a search warrant, many facts can appear innocent in isolation, but the Court may not view each piece of information alone. *See United States v. Valle Cruz*, 452 F.3d 698, 703 (8th Cir. 2006). Rather, the Court must consider the circumstances as a whole in determining whether probable cause exists. *Id.* And the probable cause standard does not require the police to have direct evidence. *See Whitner*, 219 F.3d at 297 ("[D]irect evidence linking the crime to the location to be searched is not required to support a search warrant."). Further, information that would be inadmissible at trial on hearsay grounds may be used to show probable cause. *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998). "[P]robable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.'" *Jones*, 944 F.2d at 1056 (quoting *Jackson*, 756 F.2d at 705).

After reviewing the search warrants and supporting affidavits in a practical, common-sense manner, and considering the circumstances of the investigation of the network as a whole, this Court concludes that there was a fair probability that evidence of the bank-fraud scheme and other related crimes would be found in a particular place (i.e., Defendant Dwamina's Blackberry phone and the thumb drive). *See Illinois v. Gates*, 462 U.S. at 238. Further, this Court is satisfied that

the warrant here meets the requirements under the Fourth Amendment and the

good faith exception enunciated in *United States v. Leon*, 468 U.S. 897 (1984).

Therefore, this Court recommends that Defendant Dwamina's motion to suppress

be denied.

## VI.    Defendant Roberts's Motion

Defendant Robert's Motion to Suppress Evidence Obtained by Search and

Seizure (Doc. No. 161), presented no argument regarding any alleged violation

of his right to be free from unreasonable searches and seizures.  And Defendant

Roberts neither submitted a post-hearing memorandum in support of his motion

to suppress, nor submitted a letter indicating that a memorandum would not be

filed.  At the April 7, 2011 motion hearing, the Court warned the parties that if no

post-hearing submission was submitted regarding the pending motions, that the

Court could construe that to mean that the motion was withdrawn.[12]  Out of an

abundance of caution, and in an effort to provide the Defendant due process, this

---

[12]    "It is well established that the burdens of production and persuasion
generally rest upon the movant in a suppression hearing."  *Starks*, 193 F.R.D. at
629 (quoting *de la Fuente*, 548 F.2d at 533); *see also Phillips*, 540 F.2d at 325
(stating that the ultimate burden of proof is on the defendant who seeks to
suppress evidence).  "At a minimum, it is defendant's burden to come forth with
some evidence and argument to support his position that evidence . . . should be
suppressed."  *Rosetter*, Crim. No. 10-83 (JNE/JSM), 2010 WL 5184991, at *23
(D. Minn. Oct. 1, 2010) (citing *Starks*, 193 F.R.D. at 629) ("[E]ven in those
circumstances where the Government has the ultimate burden of persuasion,
Defendant has the initial burden of making a prima facie showing of illegality.").
And "[f]ailure to provide the Court with any support for the motion is a sufficient
basis for denial of the motion."  *Id.*

Court will not consider his motion to suppress withdrawn.  Instead, this Court has reviewed the search warrant admitted into evidence relating to Defendant Roberts's residence (Hr'g Ex. 13), for the purposes of determining whether there was probable cause on the four corners of the search warrant and its application. This Court's review of the March 18, 2011 search warrant reveals no facts warranting suppression.  Therefore, this Court recommends that Defendant Roberts's motion to suppress be denied.

## RECOMMENDATON

Based on the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that**:**

1.    Defendant Okeayainneh's Motion for Dismissal Based on the Speedy Trial Act (Doc. No. 102), be **DENIED**;

2.    Defendant Okeayainneh's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 104), be **DENIED**;

3.    Defendant Okeayainneh's Pro Se Motion for Dismissal Based on Double Jeopardy Pursuant to F.R.C.P. 12(b)(3)(B) (Doc. No. 314), be **DENIED**;

4.    Defendant Adejumo's Motion to Suppress Evidence Obtained as a Result of Illegal Search or Seizure or Arrest (Doc. No. 332), be **DENIED**;

5.    Defendant Adejumo's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 333), be **DENIED**;

6.    Defendant Okafor's Motion to Suppress Evidence Obtained as a

Result of a Illegal Search or Seizure or Arrest (Doc. No. 180), be **DENIED**;

7.    Defendant Adeniran's Motion to Dismiss the Indictment (Doc.

No. 214), be **DENIED**;

8.    Defendant Earley's Motion to Suppress Evidence Obtained as a

Result of Search and Seizure (Doc. No. 116), be **DENIED**;

9.    Defendant Dwamina's Motion for Suppression of All Evidence

Obtained Pursuant to the Execution of a Search Warrant (Doc. No. 204), be

**DENIED**; and

10.    Defendant Roberts's Motion to Suppress Evidence Obtained by

Search and Seizure (Doc. No. 161), be **DENIED**.


Date:  May 13, 2011

                              _s/ Jeffrey J. Keyes_____
                              JEFFREY J. KEYES
                              United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**May 27, 2011**, a writing which specifically identifies those portions of this Report
to which objections are made and the basis of those objections.  Failure to
comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within **fourteen days** after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.

        Unless the parties stipulate that the District Court is not required by 28
U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections

made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.